## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRETT WAYNE EVERAGE,               :
                                   :      CIVIL ACTION
              Plaintiff,           :
                                   :
        v.                         :
                                   :      NO.    14-2463
NATIONAL RECOVERY AGENCY,          :
                                   :
              Defendant.           :


### MEMORANDUM

BUCKWALTER, S. J.                                          March 11, 2015


Currently pending before the Court is the Motion for Leave to File an Amended Complaint

by Plaintiff Brett Wayne Everage.  For the following reasons, the Motion is denied.

## I.     FACTUAL BACKGROUND

According to the original Complaint in this case, Defendant NRA Group, LLC ("NRA") is a

national debt collection company with its corporate headquarters located in Pennsylvania.  (Compl.

¶ 8.)  Defendant was hired to collect a consumer debt from Plaintiff involving a hospital bill

incurred at Nazareth Hospital.  (Id. ¶¶ 11, 13.)  As set forth in the Complaint, beginning in March

2013 and continuing through December 2013, Defendant repeatedly contacted Plaintiff on his

cellular phone seeking payment of this debt.  (Id. ¶ 14.)  Plaintiff asserted that Defendant contacted

him two to three times a day, resulting in, on average, more than ten collection calls in a week.  (Id.

¶ 15.)  At no time prior to contacting Plaintiff, or within five days of its initial communication with

him, did Defendant inform him that unless disputed within thirty days, the debt would be presumed

valid.  (Id. ¶ 16.)  Nor did Defendant tell Plaintiff that if he disputed the debt, Defendant would

obtain verification of the debt and would provide Plaintiff with the name and address of the company to whom he originally owed the debt.  (Id.)

On more than one occasion, Plaintiff answered Defendant's calls and informed them that he was unemployed and was unable to pay the alleged debt.  (Id. ¶ 17.)  Nonetheless, Defendant insisted that Plaintiff make a payment arrangement and threatened to keep calling.  (Id. ¶ 19.) Additionally, the debt that Defendant sought to collect is a debt which Plaintiff disputes owing based on his belief that the government's medical assistance plan would be paying the bill.  (Id. ¶ 23.)

Accordingly, on April 29, 2014, Plaintiff initiated suit against Defendant.  His Complaint alleged four causes of action as follows: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d and 1692d(5), by continuously contacting Plaintiff and failing to stop calling him after being told to stop; (2) violation of the FDCPA, 15 U.S.C. § 1692e and 1692e(2)(A), by representing that Plaintiff owed money to Nazareth Hospital, when his bill should have been covered under his government assistance plan; (3) violation of FDCPA, 15 U.S.C. §§ 1692f and 1692f(1), by failing to update its records to stop calling Plaintiff after Plaintiff told them that he was unemployed and wanted Defendant to stop calling; (4) violation of the FDCPA, 15 U.S.C. § 1692g(a), by failing to send Plaintiff written notification of his rights to dispute the debt, request verification of the debt, and or/to request information about the creditor within five days of its initial communication with him.

The parties proceeded through discovery, arbitration was originally scheduled for October 23, 2014, and arbitration was then rescheduled for November 21, 2014.  On November 14, 2014, just prior to the arbitration, Plaintiff filed the present Motion for Leave to File an Amended

Complaint.  Defendant responded to that Motion on December 3, 2014, Plaintiff filed a Reply Brief on December 10, 2014, and Defendant filed a Sur-reply on December 16, 2014.  The Motion is now ripe for consideration.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) sets out the standard for granting leave to amend a complaint when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a). The Rule clearly states that "[t]he court should freely give leave when justice so requires."  Id. Nonetheless, the policy favoring liberal amendments is not "unbounded."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).  The district court still retains broad discretion to deny a motion to amend.  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008); Robinson v. Marsh, No. Civ.A.11-1376, 2014 WL 4662277, at *2 (M.D. Pa. Sept. 12, 2014); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that the decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. at 182).

The court may deny leave to amend, among other reasons, on the basis of the futility of the amendment.  See Foman, 371 U.S. at 182.  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008); In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  The

futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion.  Holst, 290 F. App'x at 510.  The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss.  Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

A court may also deny leave to amend based on prejudice.  Prejudice to the non-moving party is "the touchstone" for the denial of a request for leave to amend.  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quotations omitted); Universal Computer Consulting, Inc. v. Pitcairn Enters., Inc., No. Civ.A.03–2398, 2005 WL 1213884, at *4 (E.D. Pa. May 18, 2005).  "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted."  Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  "But the non-moving party must do more than merely claim prejudice."  Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  To state a cognizable claim of prejudice, the defendant must establish that it would be "'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered' had the allegations in the amended complaint been timely made."  Pegasus Int'l. Inc. v. Crescent Mfg. Co., No. Civ.A.06-2943, 2007 WL 1030457, at *5 (E.D. Pa. April 2, 2007) (quoting Arthur v. Maersk, 434 F.3d 196, 206 (3d Cir. 2006)) (further quotations omitted).  Notably, however, even when a proposed amended complaint adds substantive allegations against a defendant or adds parties related to the defendant, where "'[t]he evidence required to meet these new allegations is substantially similar to that which was originally required,'" prejudice does not exist.  Pegasus Int'l, 2007 WL 1030457, at *5 (quoting Dole, 921 F.2d at 488).  The mere need for additional discovery due to amendment does not, without more, prejudice the non-moving party.  Dole, 921 F.2d at 488.  Nevertheless, the Third Circuit has "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts

or new theories." <u>Cureton</u>, 252 F.3d at 273.  Ultimately, the non-moving party bears the burden of

demonstrating prejudice.  <u>AMS Constr. Co. v. Reliance Ins. Co.</u>, No. Civ.A.04–2097, 2006 WL

1967336, at *3 (E.D. Pa. July 12, 2006).

Finally, a Defendant opposing a motion for leave to amend may assert undue delay, bad

faith, or dilatory motives.  Notably, in the Third Circuit, the mere passage of time or delay alone

does not justify denying a motion to amend.  <u>Cureton</u>, 252 F.3d at 273; <u>see also</u> <u>Collins v. City of</u>

<u>Gloucester</u>, No. Civ.A.06–2589, 2008 WL 1374213, at *6 (D.N.J. Apr. 9, 2008) ("'The mere

passage of time does not require that a motion to amend a complaint be denied on grounds of

delay.'") (quoting <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984)).  Rather, it is only where

delay becomes "'undue,' placing an unwarranted burden on the court, or . . . . 'prejudicial,' placing

an unfair burden on the opposing party" that denial of a motion to amend is appropriate.  <u>Adams</u>,

739 F.2d at 868.  "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the

exercise of due diligence, could have sought relief from the court earlier."  <u>In re Pressure Sensitive</u>

<u>Labeldstock Antitrust Litig.</u>, No. MDL-03-1556, 2006 WL 433891, at *1 (M.D. Pa. Jan. 3, 2006).

As such, the question of undue delay requires the court to focus on the movant's reasons for not

amending sooner, while "bearing in mind the liberal pleading philosophy of the federal rules."

<u>Cureton</u>, 252 F.3d at 273; <u>see also</u> <u>Lindquist v. Buckingham Twp.</u>, 106 F. App'x 768, 775 (3d Cir.

2004) (noting that the question of undue delay, as well as the question of bad faith, requires that the

court focus on the plaintiff's motives for not amending their complaint to assert this claim earlier).

"Tactical decisions and dilatory motives may lead to a finding of undue delay."  <u>Leary v. Nwosu</u>,

No. Civ.A.05–5769, 2007 WL 2892641, at *4 (E.D. Pa. Oct. 2, 2007).  Notably, "[t]here is no

presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay

becomes 'undue.'" Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006).  "Whether delay is

undue depends on the facts and circumstances of the case."  Nat'l Recovery Agency, Inc. v. AIG

Domestic Claims, Inc., No. Civ.A.05–0033, 2006 WL 1289545, at *4 (M.D. Pa. May 9, 2006).

## III.   DISCUSSION

Plaintiff presently seeks to add four additional causes of action via the Amended Complaint,

all of which arise from Defendant's attempted collection of a debt from Plaintiff.  The Court

addresses each cause of action individually.

### A.   Cause of Action Under 15 U.S.C. § 1692d(6)

Plaintiff's first new cause of action contends that Defendant violated 15 U.S.C. § 1692d and

1692d(6) of the FDCPA "by failing to disclose its true identity and instead using a fictitious name to

confuse and mislead Plaintiff."  (Proposed Am. Compl. ¶ 43(e).)  Specifically, the proposed

Amended Complaint asserts that "in its communications with Plaintiff, Defendant withheld its true

identity, choosing to identify itself as 'NRA Group, LLC.'"  (Id. ¶ 33.)  According to Plaintiff, this

was confusing "as nowhere in its written correspondence did Defendant use the name 'NRA Group,

LLC'"; rather, Defendant solely identified itself as 'National Recovery Agency.'"  (Id. ¶ 34.)  Such

tactics, according to Plaintiff, constituted a misrepresentation in an attempt to collect a debt.

Section 1692d(6) of the FDCPA makes it unlawful for a debt collector to place telephone

calls "without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6).  Meaningful

disclosure requires a debt collector to "disclose enough information so as not to mislead the

recipient as to the purpose of the call."  Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943, 946 (D.

Minn. 2007) (quoting Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal.

2005)).  Although what counts as "meaningful disclosure" remains unclear, this requirement has

been held to require the debt collector "to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." Gryzbowski v. I.C. Sys., Inc., 691 F. Supp. 2d 618, 625 (M.D. Pa. 2010) (citing Baker v. Allstate Fin. Servs., Inc., 554 F. Supp. 2d 945, 949 (D. Minn. 2008) (citing cases)); see also Pawelczak v. Fin. Recovery Servs., Inc., 286 F.R.D. 381, 387 (N.D. Ill. 2012) ("§ 1692d(6) only requires the debt collector [to] inform the debtor 1) of the name of the debt collection company, and 2) that the purpose of the telephone call was for the collection of the debt."). The Federal Trade Commission has indicated that "[a] debt collector employee's use of an alias that permits identification of the debt collector (i.e., where he uses the alias consistently, and his true identity can be ascertained by the employer) constitutes a 'meaningful disclosure of the caller's identity.'" Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, at 50105 (Dec. 13, 1988). "[Section] 1692d(6) does not prohibit a debt collection agency employee from using an alias during a telephone call, as long as the employee accurately discloses the name of the debt collection agency and explains the nature of its business." Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943, 946 (D. Minn. 2007) (citing Wright v. Credit Bureau of Ga., Inc., 548 F. Supp. 591, 597 (N.D. Ga. 1982)).

In this case, it is undisputed that on each occasion that Defendant called Plaintiff, the individual caller disclosed his or her name, as well as the facts that he or she worked with either "National Recovery Agency" or "NRA Group," and that the phone call was related to debt collection. There is no allegation that the caller used any particular alias that did not allow his/her true identity to be ascertained by Defendant as his/her employer. Furthermore, Defendant has produced evidence that NRA Group, LLC lawfully registered its trade name "National Recovery

Agency" in the Commonwealth of Pennsylvania.  (Def.'s Resp. Opp'n Mot. to Amend, Exs. 4 & 5.)

Thus, use of either name accurately disclosed and permitted meaningful identification of the debt

collection company so as not to mislead Plaintiff as to the purpose of the phone calls.[1]  As such,

nothing in the proposed Amended Complaint alleges a lack of "meaningful disclosure" for purposes

of § 1692d(6).

Plaintiff responds that Defendant's use of multiple names—NRA and National Recovery

Agency—resulted in a failure to provide "meaningful disclosure" of Defendant's identity.  In

support, Plaintiff cites to the Federal Trade Commission's policy statement, which indicates that

"[a] debt collector may use a name that does not misrepresent his identity or deceive the consumer.

Thus, a collector may use its full business name, the name under which it usually transacts business,

or a commonly-used acronym.  *When the collector uses multiple names in its various affairs, it does*

*not violate this subsection if it consistently uses the same name when dealing with a particular*

*consumer.*"  53 Fed Reg. 50097-02, at 50107 (emphasis added).  This commentary, however, does

not apply to a violation of 15 U.S.C. § 1692d(6), but rather deals with a violation of 15 U.S.C. §

1692e(14)[2]—a claim that appears nowhere in the proposed Amended Complaint.  Section 1692d(6)

merely assures that a caller does not (a) contact a consumer using an alias or inconsistent aliases

from which he or she cannot be identified; (b) misrepresent the debt collector on behalf of whom

---

[1]  Plaintiff's claim that he personally was not aware that "NRA Group" and "National Recovery Agency" were one and the same does not, under an objective standard, automatically render Defendant's use of those names a violation of § 1692d(6), particularly when both are legal names.

[2]  Section 1692e(14) states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . [t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  15 U.S.C.A. § 1692e(14).

he/she is calling; or (c) misrepresent the purpose of the call.  See Knoll, 502 F. Supp. 2d at 946.

Plaintiff cites no cases suggesting that an individual caller's use of multiple names to identify

his/her employing debt collector—particularly legally permissible names—fails to provide the

requisite "meaningful disclosure" of Defendant's identity in violation of § 1692d(b).[3]

 In short, Plaintiff's proposed new claim under § 1692d(6) fails to state a claim upon which

relief may be granted.  Therefore, such a claim is futile, meaning that leave to amend the Complaint

and add this claim must be denied.[4]

 **B.** **False Identification of Creditor Under 15 U.S.C. § 1692e(10)**

 The proposed Amended Complaint next asserts a new claim under 15 U.S.C. § 1692e(10).

According to Plaintiff, "in its communications with Plaintiff, Defendant falsely identified the name

of the creditor. . . . Specifically, in a letter dated September 9, 2013, Defendant identified the

original creditor as 'Radiology Affiliates, D, M, N, O.' . . . However, when speaking with Plaintiff

over the telephone, Defendant identified the creditor as 'Nazareth Hospital.'" (Proposed Am.

---

 [3]  Moreover, even if Plaintiff were alleging a violation of § 1692e(14), at least one court within the Third Circuit has held that "[d]espite the ambiguity at the periphery of analysis of what is a true name, § 1692e(14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise." Boyko v. Am. Int'l Grp., Inc., No. Civ.A.08-2214, 2009 WL 5194431, at *6 (D.N.J. Dec. 23, 2009); Kizer v. Am. Credit & Collection, No. Civ.A.90-78, 1990 WL 317475, at *6 (D. Conn. Dec. 17, 1990) (holding that a business's true name for purposes of § 1692e(14) includes the name in which it has a license to conduct business under state law).  There is no allegation in this case that Defendant has used anything but its actual corporate name and its licensed trade name.

 [4]  Defendant also asserts that Plaintiff engaged in undue delay in bringing this claim.  The record reveals, however, that Defendant produced the call recordings—wherein Defendant's employee identified the company as NRA Group or National Recovery Agency—on August 27, 2014.  According to Plaintiff, he did not learn that Defendant's actual incorporated name was NRA Group, LLC until Defendant's corporate representative's deposition on November 12, 2014.  Taking these facts as true, the Court does not find that Plaintiff unduly delayed in bringing this claim.

Compl. ¶¶ 29–31.)  Plaintiff alleges that "[u]pon information and belief, the creditor is not

'Radiology Affiliates, D, M, N, O" or "Nazareth Hospital."  (Id. ¶ 32.)  As such, he avers that

"Defendant violated §§ 1692e and 1692e(1) of the FDCPA by falsely identifying the name of the

creditor to Plaintiff in its communications . . . ."  (Id. ¶ 44(e).)

   Section 1692e(10) provides that "[a] debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt.  Without limiting

the general application of the foregoing, the following conduct is a violation of this section: . . . (10)

The use of any false representation or deceptive means to collect or attempt to collect any debt or to

obtain information concerning a consumer."  15 U.S.C.A. § 1692e(10).  Under this standard, a

collection letter is deceptive when "it can be reasonably read to have two or more different

meanings, one of which is inaccurate."  Wilson v. Mattleman, Weinroth & Miller, No. Civ.A.13-

237, 2013 WL 2649507, at *4 (D.N.J. June 12, 2013) (quoting Caprio v. Healthcare Revenue

Recovery, LLC, 709 F.3d 142, 149 (3d Cir. 2013)).  Whether a collection effort is deceptive

depends upon whether a "least sophisticated debtor" would be deceived by the debt collector's

efforts.  Hubbard v. Nat'l Bond and Collection Assocs., Inc., 126 B.R. 422, 430 (D. Del. 1991)

(citing Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1177 (11th Cir. 1985) (other citations omitted)).

Although "the least sophisticated debtor standard protects naive consumers, 'it also prevents

liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

reasonableness and presuming a basic level of understanding and willingness to read with care.'"

Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006) (quoting Wilson v. Quadramed Corp.,

225 F.3d 350, 354 (3d Cir. 2000)).  While not yet considered by the Third Circuit, the Sixth,

Seventh, and Ninth Circuits have adopted a "materiality" approach under which "false but

nonmaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010); see Hahn v. Triumph P'ships, LLC, 557 F.3d 755, 757 (7th Cir. 2009); cf. Hoffman v. Wells Fargo Bank., N.A., No. Civ.A.13-5700, 2014 WL 6822359, at *3 (E.D. Pa. Dec. 4, 2014) (noting that the Third Circuit has not yet taken a position on whether there is a materiality component in the FDCPA, but most circuits agree that § 1692e(10) contains a materiality requirement).  "In other words, the alleged falsity of a statement must actually distort the consumer's perception, not a minor technical glitch that even the least sophisticated consumer could understand." Isham v. Gurstel, Staloch & Chargo, P.A., 738 F. Supp. 2d 986, 995 (D. Ariz. 2010). Ultimately, "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." Donohue, 592 F.3d at 1034.

Plaintiff's claim is based on Defendant's use of different names for the actual creditor in this case.  Both sides agree that the precise name of the creditor is Radiology Affiliates of Central New Jersey.  Defendant's initial collection letter to Plaintiff, however, identified the creditor as "Radiology Affiliates, D,M,N,O."  Subsequently, in January 2, 2014, Plaintiff called Defendant and asked who the creditor on his debt was, at which point the collection agent stated that it was "Nazareth Hospital."

As a matter of law, the Court does not find the first misstatement to be anything more than non-material, minor technical glitch that would be obvious to even the least sophisticated consumer. Regardless of what suffix was placed after the name, Plaintiff was made well aware that the creditor was Radiology Affiliates.  Thus, a consumer would have no doubt that Radiology Associates was

the party attempting to collect the debt.

As to the second misstatement, the analysis is somewhat less clear-cut.  Nonetheless, in light of the factual record, the Court cannot find that identification of the creditor as Nazareth Hospital, as opposed to Radiology Associates, constitutes a false, misleading, or deceptive misrepresentation in connection with the collection of a debt.  Notably, "[t]he statute does not apply to *every* communication between a debt collector and a debtor."  Gburek v. Litton Loan Serv., LP, 614 F.3d 380, 384–85 (7th Cir. 2010).  The Third Circuit has cited with approval the Sixth Circuit's ruling that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."  Simon v. FIA Card Servs., N.A., 732 F.3d 259, 266 (3d Cir. 2013) (citing Grden v. Leikin Ingber & Winters, P.C., 643 F.3d 169 (6th Cir. 2011)).  The Sixth Circuit found, as a matter of law, that inaccurate statements about a consumer's balance statement, made after the consumer called the debt collector and asked for his balance, was "a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely."  Grden, 643 F.3d at 173.

In the present case, the statement, at issue, was made by the debt collector during a call initiated by Plaintiff to determine how to resolve his debt.  Plaintiff specifically asked who the creditor was and Defendant's employee stated that the creditor was "Nazareth Hospital."  Plaintiff, however, later testified that he understood that his debt arose out of a visit to Nazareth Hospital, as follows:

> Q.   Previously today you testified that you incurred the debt at issue with Nazareth, for medical services that were provided at Nazareth, correct?
> A.   Okay.
> Q.   Do you agree with that?
> A.   Yes.  I was there.
> Q.   You were there.  You know what debt NRA was attempting to collect, correct?

> A.      I didn't know the charges, what occurred from Nazareth, because, again, that was my HMO's problem.  All I know is, I went there for a health issues [sic].  It had been taken care of.  I don't know what happened after that.

(Def.'s Resp. Opp'n Mot. to Amend, Ex. 9, Dep. of Brett Everage ("Everage Dep."), 80:4–19, Nov. 11, 2014.)  The charges from Radiology Affiliates arose directly from his treatment at Nazareth Hospital, *i.e.* Radiology Affiliates was the imaging practice that performed the MRI scans within Nazareth Hospital.  Having already received a collection letter four months earlier indicating that Radiology Associates was seeking payment of a debt, the least sophisticated debtor would have understood that Defendant's representative's statement about who the creditor was related to the same debt.  Thus, although the creditor's name was false in the technical sense, it was not, as a matter of law, a materially false statement that was likely to mislead the least sophisticated debtor or affect such a debtor's ability to choose his response.  As addition of such a claim would therefore be futile, the Court denies the Motion for Leave to Amend on this ground.[5]

### C.      Failure to Remove Plaintiff's Number from the Computer Under 15 U.S.C. § 1692e(10)

Plaintiff's third proposed new claim asserts another violation of 15 U.S.C. § 1692e(10).  Specifically, the proposed Amended Complaint asserts that:

> 24.      Wanting to the stop the calls, on at least one occasion, Plaintiff answered Defendant's calls and told them it was calling the wrong number.
>
> 25.      In response, Defendant stated, "I'll remove the number, *Brett*."

---

[5] Defendant asserts that Plaintiff unduly delayed in bringing this claim as well.  According to the record before the Court, however, Defendant first produced the initial validation notice letter—which identified the creditor as "Radiology Affiliates D,M,N,O"—on October 10, 2014.  At the same time, it produced its agreement with the original creditor Radiology Affiliates of Central New Jersey.  Defendant did not serve supplemental and amended discovery responses identifying the original creditor of Plaintiff's account as Radiology Affiliates of Central New Jersey until October 31, 2014.  Plaintiff confirmed the identity of the original creditor at Defendant's corporate representative's deposition on November 12, 2014.  Given these facts, the Court cannot clearly find undue delay in bringing this claim.

26.     However, Defendant did not remove Plaintiff's telephone number from the system; instead it kept calling him knowing that he did not want to be contacted.

27.     Defendant's statement to Plaintiff that it would remove his number was false, as it never removed his cellular telephone number from its system or restricted calls to his cellular telephone.

. . .

44(e)   Defendant violated §§ 1692e and 1692e(10) of the FDCPA by . . . falsely claiming to Plaintiff it would take his number out of the system, when it did not.

(Proposed Am. Compl. ¶¶ 24–27, 44(e) (emphasis in original).)  The call referenced in this claim

occurred on October 31, 2013, and was made by Plaintiff to Defendant.  The following exchange

occurred:

| | |
|---|---|
| NRA: | Calls are monitored and recorded my name is April.  Is this Brett? |
| Plaintiff: | No, who is this? |
| NRA: | My name is April with the NRA Group.  Is that a wrong number? |
| Plaintiff: | Yes, it is. |
| NRA: | Okay. |
| Plaintiff: | What is this, a collection agency? |
| NRA: | Mhm, we were calling with a personal business matter, but I'll remove the number, Brett, thank you. |

(Call Recording, October 31, 2013, at 13:34.)  Plaintiff now contends that "Defendant's statement

that it was removing Plaintiff's telephone number from its system . . . was a material

misrepresentation because it caused Plaintiff to believe that Defendant's repeated harassing

telephone calls would cease."  (Pl.'s Reply Br. 14.)

Several problems underlie this allegation.  As a primary matter, Plaintiff fails to consider the

context in which the representation was made.  After seeing a missed call from Defendant, Plaintiff

contacted Defendant inquiring what the call was about.  When Defendant attempted to verify that

Plaintiff was, in fact, the person it was trying to reach, Plaintiff lied and stated that he was not Brett

Everage and that Defendant had the wrong number.  In connection with that misrepresentation,

Defendant stated that it would remove the phone number from its call list.  As Plaintiff was, in fact,

14

the true debtor on the account that Defendant was trying to collect, however, Defendant had no obligation to remove Plaintiff's number.  Certainly, the FDCPA does not envision protecting a debtor who deliberately misleads a debt collector into thinking that the debt collector has reached a wrong number and then complains when that debt collector continues to call that number upon realizing that it actually does belong to the debtor.

Moreover, as noted above, "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." Donohue, 592 F.3d at 1030.  "[T]he least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" Brown, 464 F.3d at 454 (quoting Wilson, 225 F.3d at 354).  Having affirmatively deceived Defendant, Plaintiff cannot now genuinely claim that he maintained a reasonable belief that Defendant's debt collection phone calls would cease.  Nor could any reasonable juror find that Defendant's statement about removing what it believed, at the time, to be a incorrect phone number frustrated Plaintiff's ability to intelligently choose how he would proceed in resolving his debt.

Finally, unlike with the previous two proposed claims where Plaintiff identifies new evidence he received in discovery that revealed such claims, Plaintiff offers no explanation for why this claim was not included in his original Complaint.  The phone call that is the subject of this claim was made on October 31, 2013.  Over the next two months, Plaintiff continued receiving multiple phone calls from Defendant at that cell phone number.  Accordingly, as of the filing of the lawsuit in April 2014, Plaintiff had all the information necessary to bring this claim.  Yet, Plaintiff

waited for almost seven months, just days prior to the pending arbitration, before seeking leave to amend and add this claim without offering any reason for not doing so earlier.  If this Court allowed this claim to proceed, the already-closed discovery period would need to be reopened to allow Defendant to assert any potential defenses[6]—a result that would prejudice Defendant and cause an undue burden on the Court.

In sum, the Court finds that Plaintiff is not entitled to leave to amend his second claim under § 1692e(10).  Primarily, the claim is futile as, even crediting Plaintiff's allegations, it fails to state a valid claim upon which relief may be granted.  Moreover, Plaintiff has failed to put forth any explanation for failing to include this claim earlier and for mitigating any prejudice caused to both Defendant and this Court.  Accordingly, leave to amend this claim is denied.

### D.   Violation of 15 U.S.C. § 1692f(8)

Plaintiff's last proposed additional claim is based on the recently issued Third Circuit opinion in Douglass, et al. v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. Aug. 28, 2014)—a decision issued after the filing of the original Complaint in this case.  In Douglass, the plaintiff

---

[6] Defendant's Response Brief argues that even if Plaintiff could maintain this claim under § 1692e(10), its actions were nothing more than a bona fide error under the FDCPA.  "The FDCPA is generally characterized as a strict liability statute because it imposes liability without proof of an intentional violation."  Glover v. FDIC, 698 F.3d 139, 149 (3d Cir. 2012) (quotations omitted).  However, the statute contains two exceptions to provisions imposing liability on debt collectors.  First, section 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  Second, section 1692k(e) states that no liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission."  15 U.S.C. § 1692k(e).  This first exception—upon which Defendant relies—will require the parties to conduct and exchange discovery on Defendant's "procedures reasonably adapted" to avoid this type of error.

received a debt collection letter from the defendant regarding the collection of a debt that the plaintiff allegedly owed.  Id. at 300. Visible on the face of the letter, above the plaintiff's name and address, was a sequence of numbers representing the plaintiff's account number with the defendant debt collector.  Id. at 300–01.  The number did not refer or relate to her account with the creditor. Id. at 300.  The defendant mailed the letter in an envelope with a glassine window, which allowed the plaintiff's account number, name, address, Postal Service bar code, and quick response code to be visible.  Id. at 300–01.  The quick response code, when scanned by a device such as a smart phone, revealed the same information as that displayed through the glassine window, as well as a monetary amount corresponding to the plaintiff's alleged debt.  Id. at 301.  The plaintiff brought a claim alleging that this violated § 1692f(8) of the FDCPA, which prohibits "using any language or symbol" other than a debt collector's name and address on an envelope.  Id. at 301 (quoting 15 U.S.C. § 1692f(8)).  Following the District Court's grant of summary judgment in favor of the defendant, the Third Circuit reversed, holding:

> [The defendant] insists that [the plaintiff's] account number is a meaningless string of numbers and letters, and its disclosure has not harmed and could not possibly harm [the plaintiff].  But the account number is not meaningless—it is a piece of information capable of identifying [the plaintiff] as a debtor.  And its disclosure has the potential to cause harm to a consumer that the FDCPA was enacted to address.  As we have stated before, the FDCPA "must be broadly construed in order to give full effect to [Congress's remedial] purposes."  Caprio, 709 F.3d at 148.  Construing § 1692f(8) in accord with the FDCPA's purposes in § 1692(a), we find the statute not only proscribes potentially harassing and embarrassing language, but also protects consumers' identifying information.  Accordingly, [the plaintiff's]  account number is impermissible language or symbols under § 1692f(8).

Id. at 305–06.

Plaintiff's proposed Amended Complaint now seeks to add a claim virtually identical to the one in Douglass.  Specifically, the proposed new allegations state as follows:

17

35.    Further, in its attempts to collect a debt, Defendant sent Plaintiff written correspondence dated September 9, 2013. . . .

. . .

38.    The letter was sent to Plaintiff in a window envelope.

39.    Through the window of the envelope, the account number, "ZOL261," was visible. . . .

. . .

45.    Defendant's conduct, detailed in the preceding paragraphs, violated 15 U.S.C. §§ 1692f, 1692f(1) and 1692f(8)

        . . .

c.    A debt collector violates § 1692f(8) of the FDCPA by using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

        . . .

e.    Also, Defendant violated §§ 1692f and 1692f(8) of the FDCPA by disclosing Plaintiff's account number through clear plastic window [sic] of an envelope containing a collection letter.

(Proposed Am. Compl. ¶ 45(c) & (e).)  Plaintiff asserts that by averring that debt information was visible on the outside of the envelope, he has stated a plausible claim under § 1692f(8).

While Plaintiff's claim may be viable in a newly-minted litigation where no discovery has yet to be taken and all allegations must be deemed true, the unequivocal record of this case, developed after a full discovery period, renders Plaintiff's claim futile.  Plaintiff's original Complaint averred that Defendant never sent any written notification of the debt to him.  (Compl. ¶ 29.)  Thereafter, at his November 11, 2014 deposition, Plaintiff changed his story and asserted that he did see the September 9, 2013 letter sent by Defendant, but remembered little about it:

Q.    So you're alleging that you didn't receive initial written communication from NRA within five days of the initial phone call with NRA.  Is that accurate?
A.    I've received mail from NRA stating that I incurred the debt, yes.
Q.    Do you dispute the fact that you've received written—a written letter from them within five days of the first communication from NRA?

18

      A.      I don't know what time it came in.  No, I don't remember exactly, no.  I couldn't say it came in five days, it came in 50 days or whatever.  I can't tell you.

. . .

      Q.      Do you recall receiving this letter?

      A.      I recall scanning something like this, yes.

      Q.      Yes.

      A.      The only thing my attention zeroed in was the amount.

      Q.      The amount?

      A.      I can quite honestly say yes.

      Q.      Okay.  So you have no reason to dispute the fact that you received this letter, Exhibit 7?

      A.      Not at all.

      Q.      Say that again.

      A.      No, no dispute.

      Q.      If you look to the top left corner there, is that your correct address there?

      A.      Yes, it is.

(Everage Dep. 119:16–122:24.)  Given that Plaintiff could barely remember the letter he received from Defendant, Plaintiff cannot offer any testimony that the letter he received was in a glassine window envelope that revealed his account number.  Moreover, according to the Affidavit of Anita Schaar, the Director of Payment Processing and Internal Controls for Defendant, Defendant employs the services of the Renkim Corporation ("Renkim") to print, fold, place into envelopes, and mail all correspondence directed to individuals from whom Defendant seeks to collect delinquent debts. (Def.'s Resp. Opp'n Mot. to Amend, Ex. 10, Affidavit of Anita Schaar ("Schaar Aff."), ¶¶ 1, 6.)  As such, the initial validation letter sent to Plaintiff on September 9, 2013, was produced and mailed by Renkim.  (Id. ¶ 10.)  Renkim does not maintain copies of the letters and envelopes that it mails and NRA only obtains electronically-produced reproductions of the letters without the envelopes.  (Id. ¶ 8.)  The only version of the letter available is a reproduction without any indication of how it was folded, how it was placed in an envelope, what type of envelope was used, and whether any identifying information was on the outside of the envelope.  Absent any available evidence, this claim simply cannot succeed.

Plaintiff's responsive arguments fails to save this claim.  First, Plaintiff contends that this Court recently permitted the addition of an identical claim in a proposed second amended complaint, but did not require the plaintiff in that case to support its claim with documentary evidence.  This characterization of that opinion is inaccurate.  In Kryluk v. Northland Group, Inc., No. Civ.A.14-3198, 2014 WL 6676728 (E.D. Pa. Nov. 25, 2014), the plaintiff initiated his action by filing a complaint on June 5, 2014 and an amended complaint on August 15, 2014, the latter of which was met with a motion to dismiss on August 29, 2014.  Id. at *2.  Plaintiff immediately filed a motion for leave to amend his complaint to add a claim under 15 U.S.C. § 1692f(8)—only seven days after the Third Circuit opinion in Douglass.  Id.  The defendant had yet to file an answer and the parties had not yet begun the discovery process.  Id.  As such, with no contrary evidence suggesting that the claim could not be proved, the Court permitted the amendment.  Id. at *11.  By contrast, in the present case, the parties have been proceeding through discovery since April 2014, and the discovery period has now closed.  The record reveals that Plaintiff has minimal recollection of receiving this letter, admitting that he only looked at the amount due and nothing else.  Moreover, Defendant has indicated, by sworn affidavit, that neither it nor its third party mailer has a copy of the letter to indicated how it was mailed.  As such, unlike Kryluk when the parties had not yet had the opportunity for discovery, the extensive period of discovery that has already transpired in this matter reveals the futility of this claim.

Second, Plaintiff contends that he has an exact copy of the collection letter to support his cause of action.  As noted above, however, a review of the letter itself does not provide any support for a claim under 15 U.S.C. § 1692f(8).  Rather, this subsection requires knowledge of *how* the letter was mailed and whether any improper information was visible either through a glassine

window on the envelope or on the envelope itself.  Accordingly, to prove this claim, Plaintiff would

have to provide either: (1) a copy of the letter *and* the envelope; (2) his own testimony that

identifying information about his account was visible; or (3) testimony from Defendant or Renkim

about how the letter was mailed and what information was outwardly visible.  By his own

admission, Plaintiff has none of this information.

Third and finally, Plaintiff suggests that additional discovery could be permitted on this

claim.  Several problems undermine this argument.  As a primary matter, given the record already

before the Court, Plaintiff fails to explain what type of evidence he can hope to gain in discovery in

order to substantiate his claim.[7]  Moreover, and of equal concern to this Court, is the significant

delay by Plaintiff in attempting to bring this claim.  Plaintiff was made aware of the viability of this

cause of action upon issuance of the <u>Douglass</u> decision on August 29, 2014.  Yet, unlike the

plaintiff in <u>Kryluk</u> who waited only one week before seeking leave to add this cause of action,

Plaintiff, in this case, waited almost eleven weeks after <u>Douglass</u> before moving to add this claim.

In that time, discovery closed and the parties were set to proceed to arbitration on November 21,

2014.  "A well-established example of circumstances where leave to amend will not be granted is

the 'Eleventh hour amendment.'  Failure to amend a complaint until virtually the eve of trial,

presents a situation where delay can only be viewed as undue.  Where a complaint has been

amended at the eleventh hour, the defendant is unduly prejudiced by being forced to delay an

---

[7] In response to a subsequently-filed motion for sanctions, Plaintiff has argued that he can subpoena a representative of the Remkin Corporation to testify regarding its packaging process and equipment in order to prove that the letter sent to Defendant was in a glassine envelope with identifying information showing on the outside.  Even assuming Plaintiff could obtain such testimony after the discovery deadline, however, such evidence would not substantiate a claim that the particular letter sent to Plaintiff improperly revealed identifying information about Plaintiff either through a glassine window or on the envelope itself.

imminent trial and reopen a completely new line of discovery, often as or after discovery was scheduled to be complete." Richardson v. Frank, No. Civ.A.88-7325, 1989 WL 135370, at *1 (E.D. Pa. Nov. 11, 1989).  The Third Circuit has specifically recognized the appropriateness of denial of leave to amend at the eleventh hour.  Id. (citing Adams v. Gould Inc., 739 F.2d 858, 869 (3rd Cir. 1984)).  In this case, to reopen discovery at this late stage—particularly where it is highly questionable whether discovery could reveal anything of substance—would undoubtedly prejudice Defendant and result in an undue burden on this Court.

## IV.    CONCLUSION

In light of the foregoing, the Court denies Plaintiff's Motion for Leave to Amend in its entirety.  All of Plaintiff's proposed new claims, read in the context of evidence already produced, are futile in that no reasonable juror could find in favor of Plaintiff on such claims.  Moreover, Plaintiff unduly delayed in seeking to add both (1) his claim for violation of 15 U.S.C. § 1692e(10) for failing to remove his number from the computer and (2) his claim for violation of 15 U.S.C. § 1692f(8).  Such delay will result in both prejudice to Defendant and undue hardship on this Court.  Accordingly, Plaintiff will not, at this late stage of the case, be permitted to amend his complaint and add these new claims.